Paul R. Lynd (State Bar No. 202764)
plynd@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3600
Telephone:  (415) 984-8200
Fax:  (415) 984-8300

DALE A. HUDSON (State Bar No. 081948)
dhudson@nixonpeabody.com
NIXON PEABODY LLP
Gas Company Tower
555 West Fifth St. 46th Floor
Los Angeles, CA 90013
Telephone: (213) 629-6000
Fax: (213) 629-6001

Attorneys for Defendant
KFORCE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZA GUNAWAN AND DANNY CANLAS, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>HOWROYD-WRIGHT EMPLOYMENT AGENCY, INC.; KFORCE INC.; WORKWAY; and  DOES 1-100,<br><br>                    Defendants. | Case No.: 8:13-cv-01356 CJC (SHx)<br><br>**DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          January 13, 2014<br>Time:          1:30 p.m.<br>Courtroom:  9B<br>Judge:     The Hon. Cormac J. Carney |

*//*

**TO PLAINTIFF LIZA GUNAWAN AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 13, 2014 at 1:30 p.m., or as soon thereafter as this matter may be heard by Judge Cormac J. Carney in Courtroom ___9B of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California 92701, Defendant Kforce Inc. ("Kforce") will, and hereby does, move the Court for summary judgment on Plaintiff Liza Gunawan's claims alleged against Kforce as set forth below.  Kforce's Motion is brought under Rule 56 of the Federal Rules of Civil Procedure and based on the ground that there is no genuine dispute as to any material facts on Plaintiff's claims as set forth below.  Plaintiff thus cannot establish her specific claims as follows on these grounds:

Plaintiff cannot establish her First Cause of Action for minimum wage because she was not an "employee" at the time of her interview, but rather was only an applicant or prospective employee and thus cannot recover payment of minimum wage;

Plaintiff cannot establish claims in her Second Cause of Action for penalties for alleged inaccurate itemized wage payment statements because no wages were due for her interview time, so her wage statement thus cannot have been inaccurate in not including such payment; there is no requirement that wage payment statements list year-to-date earnings, so there cannot have been any violation in that respect; the law does not require listing the client's name and address as an employer, and new requirements concerning temporary services employers were not applicable in Plaintiff's situation, so there cannot have been any violation; Plaintiff's wage statements included her Kforce employee identification number in compliance with the law; Plaintiff was provided with documentation correctly showing payment of her "net pay" for the final week of her assignment, so there was no violation; any violation was not knowing and intentional, as required for imposition of any penalties; and Plaintiff cannot establish any injury as the result of any violation.

Plaintiff cannot establish her Third Cause of Action because she lacks a private

- 1 -

right of action under California Labor Code sections 212, 213, 221, and 223 and, in any event, Kforce did not violate any of these provisions.

Plaintiff cannot establish her Fourth Cause of Action because she was not due any unpaid wages for interview time, Kforce did not fail to pay her net pay for the last week of Plaintiff's assignment, and any wages due are the subject of a bona fide, good faith dispute, precluding an award of waiting time penalties.

Plaintiff cannot establish her Fifth Cause of Action for unfair business practices because it fails for the same reasons as other, underlying causes of action.

Kforce's Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings and papers on file in this action, the supporting declarations of Lauren Chandler, Jerri Filicicchia, Cynthia Rodriguez, Jennifer Specht, and Gloria Torres filed with this Motion, Kforce's Request for Judicial Notice, any opposition and reply papers and any evidence submitted with them, any papers and evidence submitted concerning any cross-motion by Plaintiff, and upon such other matters and argument as may be presented to the Court at the time of hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place by telephone on November 18, 2013.

Dated: November 25, 2013          Respectfully Submitted,

NIXON PEABODY LLP

By:   /s/ Paul R. Lynd
Paul R. Lynd
Attorneys for Defendant
KFORCE INC.

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................... 1

II.   PROCEDURAL HISTORY ........................................................................ 1

III.  PLAINTIFF'S CLAIMS AGAINST KFORCE .......................................... 2

IV.   STATEMENT OF FACTS ......................................................................... 3

V.    LEGAL ARGUMENT .............................................................................. 7

    A.    Legal Standard on Motion for Summary Judgment ..................................... 7

    B.    Plaintiff Cannot Establish Her First Cause of Action Because She Was Not An "Employee" When She Interviewed At TRG. ........................................................................................................ 8

        1.    Only An "Employee," Not An Applicant, Is Due Wages. ...................................................................................... 8

        2.    Plaintiff Was Not An "Employee" While Interviewing. ............... 11

    C.    Plaintiff's Cannot Recover On Claims In Her Second Cause Of Action Concerning Itemized Wage Statements. ................................... 16

    D.    Plaintiff's Third Cause of Action Fails. ................................................. 17

        1.    Plaintiff Lacks a Private Right of Action. ..................................... 17

        2.    Plaintiff's Claims Fail in Any Event. ............................................ 20

    E.    The Punitive Damages Claim Is Barred As A Matter Of Law. ................ 21

    F.    Plaintiff Cannot Recover Waiting Time Penalties. .................................. 22

    G.    Plaintiff's Unfair Competition Claims Also Fail. ................................... 24

VI.   CONCLUSION ...................................................................................... 25

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Alonzo v. Maximus, Inc.*,
    832 F.Supp.2d 1122 (C.D. Cal. 2011) ........................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................... 6

*Bieber v. State Bank of Terry*,
    928 F.2d 328 (9th Cir. 1991) ..................................................................... 22

*Bureerong v. Uvawas*,
    922 F.Supp. 1450 (C.D. Cal. 1996) ..................................................... 17, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................. 6, 7

*Elliott v. Spherion Pacific Work, LLC*,
    572 F.Supp.2d 1169 (C.D. Cal. 2008) ...................................................... 16

*Holak v. Kmart Corp.*,
    2012 U.S. Dist. LEXIS 176331 (E.D. Cal. Dec. 12, 2012) ..................... 20

*Johnson v. Hewlett-Packard Co.*,
    809 F. Supp.2d 1114 (N.D. Cal. 2011) ......................................... 18, 19, 24

*Madrigal v. Tommy Bahama Group, Inc.*,
    2010 U.S. Dist. LEXIS 121573 (C.D. Cal. Oct. 18, 2010) ..................... 21

*Reid v. Smithkline Beecham Corp.*,
    366 F.Supp.2d 989 (S.D. Cal. 2005) ....................................................... 21

*Sullivan v. Kelly Services, Inc.*,
    2009 U.S. Dist. LEXIS 96544 (N.D. Cal. Oct. 16, 2009) ...........7, 14, 15, 23

**STATE CASES**

*Alcala v. Western Ag Enterprises*,
    182 Cal.App.3d 546 (1986) ........................................................................ 9

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*Amaral v. Cintas Corp. No. 2,*
    163 Cal.App.4th 1157 (2008) ........................................................................ 22, 23

*Animal Legal Defense Fund v. Mendes,*
    160 Cal.App.4th 136 (2008) .............................................................................. 17

*Barnhill v. Robert Saunders & Co.,*
    125 Cal.App.3d 1 (1981) ................................................................................... 23

*Bearden v. U.S. Borax, Inc.,*
    138 Cal.App.4th 429 (2006) .............................................................................. 11

*Brewer v. Premier Golf Properties, LP,*
    168 Cal.App.4th 1243 (2008) ............................................................................ 21

*Brown v. Superior Court,*
    199 Cal.App.4th 971 (2011) ........................................................................ 18, 21

*Calif. Highway Commission v. Industrial Accident Commission,*
    40 Cal.App. 465 (1919) ....................................................................................... 9

*Cortez v. Purolator Air Filtration Products Co.,*
    23 Cal.4th 163 (2000) ........................................................................................ 24

*Futrell v. Payday California, Inc.,*
    190 Cal.App.4th 1419 (2010) ............................................................................ 13

*Hsu v. Abbara,*
    9 Cal.4th 863 (1995) ............................................................................................ 8

*Korea Supply Co v. Lockheed Martin Corp.,*
    29 Cal.4th 1134 (2003) ...................................................................................... 24

*Lu v. Hawaiian Gardens Casino, Inc.,*
    50 Cal.4th 592 (2010) .............................................................................. 17, 18, 19

*MacIssac v. Waste Management Collection & Recycling, Inc.,*
    134 Cal.App.4th 1076 (2005) ............................................................................ 14

*Martinez v. Combs,*
    49 Cal.4th 35 (2010) .................................................................................... passim

*Moradi-Shalal v. Fireman's Fund Ins. Companies,*
    46 Cal.3d 287 (1988) ......................................................................................... 17

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT

*Morgan v. United Retail, Inc.*,
 186 Cal.App.4th 1136 (2010) ................................................................. 24

*Murphy v. Kenneth Cole Productions, Inc.*,
 40 Cal.4th 1094 (2007)(holding Legislature "imposed a penalty on employers who
 fail to provide itemized wage statements that comply with the Labor Code"];
 *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 341 ["an employee [is]
 entitled to recover a statutory penalty under section 226, subdivision (e).].) ......... 24

*People v. Gardeley*,
 14 Cal.4th 605 (1996) ............................................................................... 8

*Pineda v. Bank of America, N.A.*,
 50 Cal.4th 1389 (2010) ............................................................................ 24

*Singh v. Superior Court*,
 140 Cal.App.4th 387 (2006) ..................................................................... 8

*State Compensation Ins. Fund v. Workers' Compensation Appeals Board*,
 59 Cal.App.3d 647 (1976) ................................................................... 9, 10

*Sumner v. Edmunds*,
 130 Cal.App. 770 (1933) ........................................................................... 9

*White v. Ultramar Inc.*,
 21 Cal.4th 563 (1999) .............................................................................. 21

**FEDERAL STATUTES**

Class Action Fairness Act ................................................................................ 1

**STATE STATUTES**

Cal. Business and Professions Code § 17200 *et seq.* ...................................... 2, 23

Cal. Civ. Code § 3294 .................................................................................. 21

Cal. Code Civ. Proc. § 415.30 ......................................................................... 1

Cal. Code Civ. Proc. § 431.30(d) ..................................................................... 1

Cal. Labor Code §§ 61, 1193.5 ........................................................................ 9

Cal. Labor Code § 18 ................................................................................... 11

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Cal. Labor Code § 212 ...................................................................... 17, 18, 19

Cal. Labor Code § 1194 .......................................................................passim

**RULES**

Fed. R. Civ. P. 56(a) .......................................................................... 6

Fed. R. Civ. P. 56(c) .......................................................................... 6

**REGULATIONS**

Cal. Code Regs., Title 8, § 11040(2)(E), (H) ................................ 11

Cal. Code Regs., Title 8, § 11040(2)(F) ........................................ 11

Cal. Code Regs., Title 8, § 13520 .................................................. 22

IWC Wage Order No. 4 .................................................................. 10

**KFORCE'S MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Liza Gunawan's lawsuit against Defendant Kforce Inc. is based on a remarkable proposition – that a prospective employer should have to pay for all interview time, even when the interview is with an applicant and there was no previous relationship.  Not surprisingly, no case supports such a requirement.  To the contrary, the available authority points in the opposite direction from Plaintiff's contention. Plaintiff overlooks the fundamental requisite that wages are only due an "employee," which an applicant or a prospective employee is not.  At that stage, an employment relationship has not yet formed.  Yet, largely because of Kforce's alleged control essentially in scheduling an interview at an appointed time, Plaintiff claims that she should have to be paid.  She is wrong.  As discussed, Plaintiff's interview with a Kforce client for a possible work assignment took place when Plaintiff was a mere applicant and prospective employee.  Plaintiff concedes as much, as her First Amended Complaint alleges that she was only "interviewing for employment."  FAC ¶ 33. Plaintiff had no previous relationship or assignment with Kforce.  She did not even complete or sign any employment paperwork – including an Employee Agreement – until <u>after</u> the interview, after she received an offer, and after she accepted.

Simply put, on the law and the facts here, Plaintiff cannot be due any wages for her interview time.  Under Plaintiff's logic, every employer – or at least every staffing industry firm – would be forced to pay every applicant for time spent on an initial interview for employment.   This notion is against the law and common sense. Plaintiff's wage claim should be dismissed because she and Kforce did not yet have an employment relationship at the time of the interview.  In addition, Plaintiff's derivative and additional wage and hour claims against Kforce fail as well.  Therefore, Kforce's Motion for Summary Judgment should be granted.

II.    **PROCEDURAL HISTORY**

On June 18, 2013, Plaintiff filed suit in Orange County Superior Court.  On June

1

27, 2013, without serving her initial complaint, Plaintiff filed a First Amended Class Action Complaint for Damages, Penalties, Restitution and Injunctive Relief ("FAC"). It alleged claims against Kforce, Howroyd-Wright Employment Agency, Inc. (doing business as "Apple One"), and Workway.  All three defendants are professional staffing firms.  FAC ¶¶ 11-15.  Although Plaintiff alleged similar claims against the three defendants, they have no relationship to each other with respect to the claims in this case. *See* Dkt. No. 5, Nichols Decl., ¶¶ 2-7.

Kforce acknowledged receipt and accepted service. *See* Cal. Code Civ. Proc. § 415.30. On August 28, 2013, Kforce filed an Answer in state court, with a general denial. *See* Dkt. No. 1, Exh. J; Cal. Code Civ. Proc. § 431.30(d).  On August 30, 2013, Kforce timely removed the action pursuant to the Class Action Fairness Act.  On September 10, 2013, Plaintiff filed a Notice of Dismissal with respect to Defendant Howroyd-Wright Employment Agency, Inc. *See* Dkt. 11.

On October 31, 2013, the Court issued an Order converting Workway's pending Motion to Dismiss into a Motion for Summary Judgment.  The Court also ordered Kforce to this Motion for Summary Judgment by November 25, 2013. *See* Dkt. 26.

## III.  PLAINTIFF'S CLAIMS AGAINST KFORCE

Plaintiff asserts five causes of action against Kforce.  The First Cause of Action seeks payment of minimum wage under California Labor Code section 1194 for time she spent interviewing before being hired by Kforce and its client for her one and only assignment with Kforce.[1]  The Second Cause of Action seeks penalties under section 226 for alleged violations of itemized pay statement requirements.  Plaintiff's Third Cause of Action alleges claims concerning payment of wages by debit paycard, along with a claim of alleged secret underpayment of wages for the last week of Plaintiff's assignment.  The Fourth Cause of Action seeks waiting time penalties under section

[1] All statutory citations are to the California Labor Code, unless otherwise indicated.

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

203, related to Plaintiff's underlying wage claims.  Finally, Plaintiff's Fifth Cause of Action repackages her other underlying causes of action as an Unfair Competition Law claim under California Business and Professions Code section 17200 *et seq.*

## IV.    STATEMENT OF FACTS

Kforce is a professional staffing firm.  It matches employer clients with the best-qualified candidates to fill temporary assignments in their businesses.  Kforce reviews orders from clients and seeks to find possible candidates to fill the clients' positions through various sources.  Among the sources, Kforce may look at individuals who have submitted their resumes to Kforce for consideration for assignments or individuals who have posted their resumes elsewhere, such as with on-line resources.  *See* Chandler Decl. ¶¶ 2-3; Filicicchia Decl. ¶ 2.

If Kforce locates a good prospective candidate, it contacts the candidate to discuss interest and review the candidate's skills and desired pay rate, among other things.  *See* Chandler Decl. ¶ 2.  Candidates who are hired by Kforce for a temporary assignment are sometimes referred to as "consultants" once they are employees.  *See* Filicicchia Decl. ¶ 2.

In June 2012, Kforce sought to fill a large number of positions on a quick basis for its client, Title Resource Group ("TRG").  Kforce's National Recruiting Center ("NRC") in Tampa, Florida and its Irvine office were involved in identifying possible candidates.  *See* Chandler Decl. ¶¶ 2, 4; Filicicchia Decl. ¶ 3.  Lauren Chandler, a recruiter at the NRC at the time, identified Plaintiff as a possible candidate for a position at TRG based on a resume that Plaintiff previously submitted to Kforce on-line.  *See* Chandler Decl. ¶¶ 2, 5.  On June 6, 2012, Chandler spoke with Plaintiff regarding the TRG opportunity.  Because Plaintiff was interested and Kforce thought she may be a good candidate, Kforce invited her for a screening interview at its Irvine office on June 7, 2012.  Plaintiff confirmed that she would attend.  *See* Chandler Decl. ¶ 6, Exh. A; Filicicchia Decl. ¶ 4.

At this time, Plaintiff was only an applicant and a candidate for possible

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

assignment with Kforce.  Chandler followed her regular practice in speaking with Plaintiff.  As with all candidates, Chandler told Plaintiff that there was no guarantee of employment with Kforce or anyone else, but only an opportunity.  Chandler said that Kforce would send Plaintiff's resume to its client to see if TRG was interested, and that Kforce would let Plaintiff know if there was interest.  *See* Chandler Decl. ¶ 7.  When contacted about the TRG opportunity, Plaintiff had not ever worked for Kforce, nor had Kforce contacted her before that time.  Plaintiff applied for a different assignment in April 2012, but was not contacted until Chandler called her on June 6, 2012 about the TRG opportunity.  *See* Chandler Decl. ¶¶ 8-9, Exh. B, pp. 1-2, ¶ 10.

Plaintiff attended the screening interview with Kforce at its Irvine office on Thursday, June 7, 2012.  *See* Filicicchia Decl. ¶ 4.  After the interview, Jerri Filicicchia, an Account Manager and Talent Director at Kforce's Irvine office, e-mailed a copy of Plaintiff's resume to TRG to inquire whether TRG would be interested in interviewing Plaintiff.  *See id.*  TRG asked to interview Plaintiff.  On the evening of June 7, 2012, Filicicchia e-mailed Plaintiff to schedule an interview at TRG for June 8, 2012.  Filicicchia included a copy of TRG's Employment Application, which Plaintiff needed to complete.  *See* Filicicchia Decl. ¶ 5, Exh. A.  Also on the evening of June 7, 2012, Filicicchia e-mailed Plaintiff a job description for the interview the next day at TRG.  *See* Filicicchia Decl. ¶ 6, Exh. B.  Plaintiff confirmed that she would attend the TRG interview the following day, submit the application to TRG, and "I will let you know the result tomorrow."  Filicicchia Decl. ¶ 7, Exh. C.

In interviewing with TRG and in related activities, Plaintiff was only an applicant who admittedly was "interviewing for employment."  FAC ¶ 33.  During Filicicchia's interactions with Plaintiff, she never told Plaintiff that she would be paid for her interview time.  Plaintiff never raised that question to her.  *See* Filicicchia Decl. ¶ 11.  In her experience, Filicicchia never had any candidate ask about being paid for any time spent interviewing for any potential assignment.  *See id.*

In dealing with Plaintiff, Filicicchia followed her usual practice with respect to

4

what she explained to Plaintiff.  Filicicchia was aware that Plaintiff had not worked on any previous assignment for Kforce.  Following her regular practice, Filicicchia informed Plaintiff that she would become a Kforce employee only if Kforce found a suitable assignment and TRG hired her.  Filicicchia also informed Plaintiff that, just because Plaintiff interviewed with a Kforce client, the interview did not mean that she would be hired by anyone.  *See* Filicicchia Decl. ¶¶ 12-13.

After the TRG interview on Friday, June 8, 2012, TRG decided to hire Plaintiff for an assignment starting on Monday, June 11, 2012.  Filicicchia asked Plaintiff to confirm and also to come into the office that afternoon "to do your paperwork so we can get you ready to go for payroll."  Filicicchia Decl. ¶ 8, Exh. D.  Whenever Kforce hired a new consultant, such as Plaintiff, it needed the individual to complete a variety of paperwork for Kforce to establish the new employee and for payroll purposes.  *See* Filicicchia Decl. ¶¶ 8, 12.  On June 8, 2012, in preparation for Plaintiff's placement at TRG and for her new hire and onboarding paperwork, Filicicchia prepared a Placement Form, or Start Sheet.  She sent it to the Kforce employees who handled new hire and onboarding paperwork.  *See* Filicicchia Decl. ¶ 9, Exh. E.  Plaintiff confirmed to Filicicchia that she would come into the office on the afternoon of June 8, 2012 to complete her new hire and onboarding paperwork.  *See* Filicicchia Decl. ¶ 10.

With respect to onboarding new consultants, Kforce's standard practice has been to prepare new hire and onboarding paperwork only after an individual has been offered a position with a client, the individual has accepted the offer, and Kforce's Service Coordinator has received a Start Sheet with information about the individual and the assignment.  *See* Rodriguez Decl. ¶ 3.  On June 8, 2012, after Filicicchia submitted the Start Sheet for Plaintiff, Service Coordinator Cynthia Rodriguez prepared new hire and onboarding paperwork for Plaintiff's assignment with TRG starting on June 11, 2012.  *See* Rodriguez Decl. ¶¶ 4-5; Torres Decl. ¶¶ 3-5, Exh. A.

Plaintiff came to the Irvine office on the afternoon of June 8, 2012, where she reviewed and signed new hire and onboarding documents for Kforce.  Among the

5

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

documents that afternoon, Plaintiff completed and signed a Kforce Employment Application, Kforce's Background & Credit Check Authorization & Release Form, an Employee Agreement, a Kforce Pre-Employment Drug Screen Consent and Release Form, Kforce's Confidential Information Agreement, an Acknowledgement of Kforce's Employment Policies, an Acknowledgement of Kforce's 2012 Hourly Consultant Benefit Fact Sheet, and a Kforce Consultant Emergency Contact Sheet. *See* Rodriguez Decl. ¶¶ 6-18, Exhs. A-K; Torres Decl. ¶¶ 6-8. Kforce's regular practice is to add a new consultant, such as Plaintiff, to its payroll after receiving the signed new hire and onboarding paperwork. *See* Rodriguez Decl. ¶ 6.

Plaintiff started her assignment at TRG on Monday, June 11, 2012. *See* Chandler Decl. ¶¶ 8-9, Exh. B, p. 1, ¶ 11. Since that assignment ended in October 2012, Plaintiff has not had another interview and has not worked on another assignment through Kforce. *See id.*

Kforce paid Plaintiff the wages for the last week of her TRG assignment by a TotalPay Card with Money Network checks. Plaintiff's net pay for that week was $310.86. *See* FAC ¶¶ 58, 69, 71; Rodriguez Decl. ¶ 19; Specht Decl. ¶¶ 2-7, Exhs. A-B, ¶ 16. In providing this payment to Plaintiff, Kforce gave her a sheet with details concerning this wage payment, including reflecting "net pay" of $310.86. *See* Rodriguez Decl. ¶¶ 20-21, Exh. L. Subsequently, Kforce sent Plaintiff a further document with additional information, reflecting that the net pay had been deposited onto a paycard. *See* FAC, Exh. B; Specht Decl. ¶ 7, Exh. B, ¶¶ 16-17.

When making a wage payment with a TotalPay Card, Kforce's regular practice has been to provide Money Network checks, along with information about the card and checks, instructions for use and activation, a schedule of fees, and instructions on how to use Money Network checks to withdraw the entire amount for free. *See* Rodriguez Decl. ¶ 19; Specht Decl. ¶¶ 8-13, Exhs. C-G. Kforce sent all of this information to Plaintiff with her payment. *See* Rodriguez Decl. ¶ 19. By using a Money Network check, an employee may write a check for the entire balance of the paycard, and

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

withdraw it on demand and without any fee.  *See* Specht Decl. ¶ 10, Exh. D, pp. 4, 8, ¶¶ 12-13, Exh. G.  The Money Network checks provided specifically instruct that they are "Payable without discount or fee at any California Walmart location," including withdrawal of the entire amount.  *See* Specht Decl. ¶ 13, Exh. G.

Employees working on temporary assignments in California received itemized wage payment statements prepared and issued by ADP, Kforce's vendor, rather than by Kforce.  ADP made those pay statements available electronically on the iPay system.  *See* Specht Decl. ¶ 14.  Among other things, Plaintiff's wage statements showed her employee identification number.  *See* FAC, Exh. B; Specht Decl. ¶ 15.

## V.    LEGAL ARGUMENT

### A.    Legal Standard on Motion for Summary Judgment.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court may grant summary judgment on "each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

Rule 56(a) requires granting summary judgment if the moving party "shows that there is no genuine dispute as to any material fact."  Material facts are those facts necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" when its resolution would affect the outcome of the suit, looking at the substantive law.  *Id.*  If the court determines that there is no genuine issue as to any material fact and Kforce is entitled to judgment, then summary judgment is mandatory.  *Celotex, supra,* 477 U.S. at 322.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole. . . ."  *Id.* at 327.  It is the principal tool by which factually insufficient claims can be "isolated  and  prevented  from  going  to  trial  with  the  attendant  unwarranted

7

1  consumption of public and private resources." *Id.*

2  **B.  Plaintiff Cannot Establish Her First Cause of Action Because She**
3  **Was Not An "Employee" When She Interviewed At TRG.**

4  In her First Cause of Action, Plaintiff sues for payment of minimum wage under
5  section 1194.  She claims that she should have been paid for her time spent
6  interviewing with TRG on June 8, 2012.  *See* FAC ¶¶ 35, 48.  Plaintiff cannot establish
7  this claim.  Not only does she concede that she was only "interviewing for
8  employment" at the time (FAC ¶ 33), Plaintiff was not an "employee" of Kforce then.
9  Rather, she was only an applicant or prospective employee, who thus cannot have been
10  due any wages for that time.

11  **1.  Only An "Employee," Not An Applicant, Is Due Wages.**

12  No case arising under California law holds what Plaintiff seeks here – that an
13  individual who has not yet been hired by any party, including a staffing agency, or
14  worked any assignment, nevertheless must be paid for time spent interviewing for an
15  initial job opportunity.  Such a notion is preposterous.  After all, as a basic requisite
16  under the law and common sense, the obligation to pay wages first requires an
17  employer-employee relationship.  An applicant or interviewee generally would not
18  qualify.  Indeed, one case recognized that a staffing firm employee's "employment
19  relationship" did not begin until the "first day of her first temporary assignment" with
20  one of the firm's clients.  *Sullivan v. Kelly Services, Inc.*, 2009 U.S. Dist. LEXIS
21  96544, at *3 (N.D. Cal. Oct. 16, 2009).

22  Section 1194, on which Plaintiff sues, authorizes only an "employee" to bring an
23  action for minimum wage.  It provides that "any *employee* receiving less than the legal
24  minimum wage or the legal overtime compensation applicable to the *employee* is
25  entitled to recover in a civil action the unpaid balance of the full amount of this
26  minimum wage or overtime compensation. . . ."  § 1194(a)(emphasis added).  As the
27  law's plain language establishes, the obligation to pay minimum wage arises only
28  between parties who are employer and employee at the time.  Stating the obvious about

8

section 1194, the California Supreme Court recognized: "That only an employer can be liable, however, seems logically inevitable as no generally applicable rule of law imposes on anyone other than an employer a duty to pay wages." *Martinez v. Combs*, 49 Cal.4th 35, 49 (2010).

Like with section 1194, and as recognized in *Martinez*, California wage and hour laws generally protect an "employee," not an "applicant." When California wage and hour law protects an "applicant" as well, it has said so expressly. *See, e.g.,* § 98.6(a)(no discrimination against "employee *or applicant* for employment because the employee *or applicant*" engaged in protected activity); § 1051 (protecting "employee or applicant" fingerprints and photographs)(emphasis added).

The use of "employee" and exclusion of "applicant" in applicable statutes and regulations is significant. The words of a statute "generally provide the most reliable indicator of legislative intent." *Hsu v. Abbara*, 9 Cal.4th 863, 871 (1995). A court may reasonably conclude that the use of different language in a provision means that the Legislature or rulemaking body intended a different meaning. *Singh v. Superior Court*, 140 Cal.App.4th 387, 399 (2006). "When the Legislature has used a term or phrase in one part of a statute but excluded it from another, courts do not imply the missing term or phrase in the part of that statute from which the Legislature has excluded it." *People v. Gardeley*, 14 Cal.4th 605, 621-622 (1996). Consequently, the exclusion of "applicant" from section 1194 – while using that term in other provisions – demonstrates the intent that applicants do not have to be paid minimum wage.

Bearing these considerations in mind, California authority has held that an applicant or prospective employee is not eligible for wages or other benefits that otherwise would flow from an employment relationship. The Labor Commissioner has rejected Plaintiff's claim that interview and pre-employment time is controlled and thus must be compensated. Contrary to Plaintiff's claim, the Labor Commissioner takes the view that such time generally is not compensable. That agency holds that "try out time," such as testing a prospective employee or having prospective employee

9

demonstrate skills in what would be an interview or essentially an interview, generally is non-compensable. *See* Req. for Jud. Notice, Exh. 1, DLSE Enforcement Policies and Interpretations Manual ("DLSE Manual") (2002), § 46.7, p. 46-5.[2] This time is not compensable as long as it involves testing and not training, there is no productive work performed, and the length of time is reasonable. *See id.* This logic excludes interview time, which most often involves only an interview and not even any testing or "try out time" – and is when an individual only would be a prospective employee.

Similarly, California courts have held that an applicant or prospective employee injured in pre-employment activities is not entitled to worker's compensation benefits because he or she is not an "employee" then. *See, e.g., State Compensation Ins. Fund v. Workers' Compensation Appeals Board*, 59 Cal.App.3d 647 (1976)(individual who worked on daily basis, and required to report each day to apply, not an employee); *Sumner v. Edmunds*, 130 Cal.App. 770, 777-778 (1933)("A mere offer of services not yet accepted by the prospective employer is not sufficient to make the offeree an employee."); *Calif. Highway Commission v. Industrial Accident Commission*, 40 Cal.App. 465, 467-468 (1919)(potential employer who directed individual to report to location for possible work was "identical with that of an employment office in finding work for those seeking employment," with no employment relationship formed until reported and "acceptance of his proffered service"). The reason is intuitive: For an injury to happen in employment, "there obviously must be a subsisting employment." *State Compensation Ins. Fund, supra,* 59 Cal.App.3d at 652. Just as obviously, a

---

[2] While the DLSE Manual is not binding, its provisions "may be considered for their persuasive value." *Alonzo v. Maximus, Inc.*, 832 F.Supp.2d 1122, 1127 n. 3 (C.D. Cal. 2011). The DLSE, or Labor Commissioner, is authorized to enforce the IWC's wage orders. Cal. Labor Code §§ 61, 1193.5; *Alcala v. Western Ag Enterprises*, 182 Cal.App.3d 546, 551 (1986)(DLSE "is the agency charged with interpreting the intent of the IWC. Its interpretation is entitled to great weight under established principles of statutory construction, unless it is clearly unreasonable, it will be upheld.")

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

prospective employee is not in that position.  "Almost as a matter of definition, a job applicant or seeker of employment is not an employee."  *Id.* at 654.

This basic logic cannot be ignored.  The law only protects an "employee" in this and similar instances, as discussed.  Plaintiff's claim skips a fundamental point in claiming that she was an "employee" of Kforce at the time of her TRG interview, when it was an interview for an initial assignment with no prior relationship.  On the facts and the law, as well as applying common sense, she was not an "employee."

### 2.    <u>Plaintiff Was Not An "Employee" While Interviewing.</u>

As discussed, section 1194 only covers an "employee."  Actions under this section may involve looking at the definitions in the Industrial Welfare Commission ("IWC") wage orders, which "generally define the employment relationship, and thus who may be liable" on a minimum wage claim.  *Martinez, supra,* 49 Cal.4th at 52. Even under this analysis, Plaintiff was not an "employee" and cannot recover.

At the outset, Kforce notes that *Martinez* involved a much different situation and issue.  While Plaintiff's claim concerns the most basic question of whether an employment relationship existed at all with anyone, the plaintiffs in *Martinez* unquestionably already had a direct employer.  That issue was not addressed there. Instead, the main issue in *Martinez* was joint employment, specifically whether parties who contracted with the direct employer could be considered joint employers.  *Id.* at 42-43, 48, 50.  In this respect, *Martinez* may be more directed at whether a joint employment relationship existed, rather than an employment relationship in the first instance, as is the issue here.

IWC Wage Order No. 4 (Professional, Technical, Clerical, Mechanical, and Similar Occupations) applies to Kforce and Plaintiff's eventual work at TRG.  It also requires an employment relationship as a requisite.  The wage order defines "Employee" as "any person employed by an employer."  Cal. Code Regs., tit. 8, § 11040(2)(F).  "'Employ' means to engage, suffer, or permit to work," while "'Employer' means any person as defined in Section 18 of the Labor Code, who

11

1  directly or indirectly, or through an agent or any other person, employs or exercises

2  control over the wages, hours, and working conditions of any person."    Cal. Code

3  Regs., tit. 8, § 11040(2)(E), (H).[3]  The wage orders are subject to the normal rules of

4  statutory interpretation. *Bearden v. U.S. Borax, Inc.*, 138 Cal.App.4th 429, 435 (2006).

5  Applying these definitions, the test for "employ" under *Martinez* – or at least for

6  a joint employment relationship – is whether a putative employer: (1) exercised control

7  over wages, hours, or working conditions, (2) suffered or permitted an individual to

8  work, or (3) engaged an individual, "thereby creating a common law employment

9  relationship." *Martinez, supra,* 49 Cal.4th at 64.  Significantly, as the California

10  Supreme Court also made clear, the mere possibility of a "downstream benefit" to a

11  party is insufficient. *Id.* at 70 ("the concept of a downstream benefit as a sufficient

12  basis for liability appears nowhere in the wage order's definition of 'employ'").

13  Under any of these three bases, Plaintiff was not an "employee" of Kforce when

14  she interviewed for the TRG assignment.    Again, Plaintiff's whole argument

15  essentially presupposes an employment relationship already existed, when there is no

16  evidence that she and Kforce formed such a relationship until <u>after</u> Plaintiff

17  interviewed and accepted the TRG assignment.    Again, too, Plaintiff concedes as

18  much, acknowledging that her TRG interview was merely "interviewing for

19  employment."  FAC ¶ 33.    In other words, she admittedly was not already an

20  employee.  That concession should be the end of the story.

21  The fundamental question is when Plaintiff actually formed an employment

22  relationship with Kforce.  The facts negate any claim of an employment relationship at

23  the time of the TRG interview, under any of the *Martinez* tests.  As discussed, the

24  beginning of the employment relationship was not until after the TRG interview and

25

26

27  [3] Under section 18, "person" simply means "any person, association, organization, partnership, business trust, limited liability corporation, or corporation."

28

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Plaintiff started work for TRG.  Until then, Plaintiff was only an applicant and prospective employee.  She never had performed an assignment for Kforce or even was interviewed previously.  Kforce contacted Plaintiff to inquire about her interest in an assignment with TRG.  In keeping with Kforce's regular practice, two representatives who worked with Plaintiff made clear that there was no guarantee of employment whatsoever.  Kforce's regular practice, which it followed in Plaintiff's case, was not to prepare new hire or onboarding paperwork until after an individual had an assignment offered and accepted.  Most importantly, Plaintiff was not presented with any new hire and onboarding paperwork – nor did she sign any paperwork – until after her interview, after she received an offer for a TRG assignment, and after she accepted that offer.  That paperwork included an Employee Agreement and an Employee Work Assignment for TRG.  Plaintiff started working on her assignment on June 11, 2012, performing no work before that point but rather only "interviewing for employment."  FAC ¶ 33.  Only at that point when Plaintiff started work on the TRG assignment, on June 11, 2012, was Plaintiff an "employee" under any definition.

Against this backdrop, the three *Martinez* tests do not support Plaintiff.  First, Kforce did not control Plaintiff's wages, hours, or working conditions during her TRG interview.  A prospective employee's interview for initial employment, as here, is not something that even involves having to set wages or working conditions for that time.  It is not work, as the Labor Commissioner recognizes.  *See* DLSE Manual, § 46.7, p. 46-5.  The fact that Kforce scheduled an agreeable time for the interview also did not establish an employment relationship.  By necessity, a prospective employer must schedule a time to interview a prospective employee and doing so alone does not create an employment relationship.  Otherwise, every prospective employer would have to pay every prospective employee for an interview, unless it allows the candidate to attend whenever she chooses – which would be absurd and unrealistic.

Second, Plaintiff was not suffered or permitted to work by Kforce during her TRG interview.  Again, the time was only an interview of a prospective employee for

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

an initial assignment, with no previous relationship.  There is no claim or evidence that Plaintiff did anything other than be interviewed, which she claims lasted an hour.  She did not perform any productive work for anyone.  As with "try out time," this time by a prospective employee is not compensable.  *See* DLSE Manual, § 46.7, p. 46-5.

Third, Plaintiff and Kforce did not form a common law relationship before or at the time of the TRG interview.  This test looks at several possible factors, some of which cannot apply here (e.g., the skill required and whether the alleged employer supplied tools, instruments, and a place of work) because the alleged activity involved only interviewing, not any productive work    *See Futrell v. Payday California, Inc.*, 190 Cal.App.4th 1419, 1434 (2010).  The factors also assume that an individual performed "work."  *Id.*  As discussed above, under the facts here and in accord with the Labor Commissioner's view, the mere interview of a prospective employee does not constitute work or compensable time.  *See* DLSE Manual, § 46.7, p. 46-5.  Any argument by Plaintiff here collapses under the critical factor of "whether the parties believe they are creating an employer-employee relationship."  *Id.*  Here, because Plaintiff knew there was no guarantee of employment and, even more importantly, she did not sign any agreement or other paperwork with Kforce until <u>after</u> her TRG interview, the parties cannot have formed a common law employment relationship at the time of the TRG interview.   No reasonable person would understand an employment relationship to have formed simply with an interview, before any offer or acceptance, and before any new hire paperwork.

In sum, Plaintiff was only a prospective employee interviewing for an initial assignment with Kforce when she interviewed with TRG.  She was not an employee of Kforce at that time under any definition.  At most, the TRG interview only presented a potential and insufficient "downstream benefit" to Plaintiff and Kforce, assuming that TRG decided to hire Plaintiff for an assignment and that she only then could become a Kforce employee.  *Martinez, supra,* 49 Cal.4th at 70.  Plaintiff's claim that all interview time must be paid – regardless of any other consideration – is illogical and

14

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

disregards any legal or commonsense concept of an employment relationship. Quite literally, Plaintiff's position would lead not only staffing firms, but rather every prospective employer, to have to pay every individual for any interview for an initial assignment or job – regardless of the lack of any prior relationship. Such an interpretation of the law and wage order would lead to an absurd result, which must be avoided. *MacIssac v. Waste Management Collection & Recycling, Inc.*, 134 Cal.App.4th 1076, 1083 (2005).

Finally, Kforce expects Plaintiff to rely on *Sullivan v. Kelly Services, Inc*. No court has cited that decision. It does not help Plaintiff here. Under the circumstances in that case, *Sullivan* concluded only that a staffing firm had to pay for interview time for interviews for a new assignment <u>after</u> the end of an initial assignment. *Sullivan v. Kelly Services, Inc.*, 2009 U.S. Dist. LEXIS 96544, at *3 (N.D. Cal. Oct. 16, 2009). This result stemmed from a previous decision based on the successful argument by the employer, in a previous decision treated as res judicata, that an individual on the facts there remained employed by the staffing firm after the end of an assignment. Thus, the subsequent interviews in *Sullivan* were as an "employee." *Id.* at *16-*17. Plaintiff's situation is much different. She only had an initial interview, when she was not yet an "employee," and never had any subsequent interview. Nothing in *Sullivan* held that such initial interview time must be paid. To the contrary, *Sullivan* treated the employment relationship as not having started until the first assignment began. *Id.* at *3. Accordingly, because Plaintiff was not an "employee" when she interviewed with TRG, she cannot establish her First Cause of Action.[4]

---

[4] In addition to section 1194, Plaintiff her minimum wage claim on sections 1194.2, 1197, and 1197.1. The result is the same under those sections, because they each involve the minimum wage. Sections 1197 and 1197.1 prohibit payment of less than the minimum wage and authorize a civil action, respectively. Section 1194.2 authorizes recovery of liquidated damages, but any potential recovery depends on establishing a claim under section 1194. *Martinez v. Combs*, 49 Cal.4th 35, 49 (2010).

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

**C.   Plaintiff's Cannot Recover On Claims In Her Second Cause Of Action Concerning Itemized Wage Statements.**

Plaintiff cannot establish the claims alleged in her Second Cause of Action itemized wage statement penalties under section 226.

First, Plaintiff alleges that Kforce did not provide an accurate wage statement because it did not include pay for the TRG interview.  FAC ¶¶ 54, 56-57.  Because Plaintiff was not due any wages, there cannot have been any accompanying wage statement violation.  Plaintiff also cannot recover any penalty if an error did not result from "knowing and intentional" failure.  § 226(e)(1).[5]  On this issue, because Kforce did not believe that the interview time was compensable and no case had so held, there cannot have been any knowing and intentional failure.  *Sullivan, supra,* 2009 U.S. Dist. LEXIS, at *19 (N.D. Cal. Oct. 16, 2009).

Second, Plaintiff alleges that her wage statement did accurately list her year-to-date pay.  *See* FAC ¶ 58.  The statute does not require year-to-date information.  *See* § 226(a).  Third, Plaintiff complains that her pay statements did not list TRG, provide the rate of pay and hours for each temporary assignment, or separate wages by each temporary assignment.  *See* FAC ¶¶ 61-62.  Nothing requires listing TRG's name and address.  *See* § 226(a).  Moreover, these new requirements that apply to temporary services employers were not effective until July 1, 2013 – after Plaintiff stopped working in October 2012.  *See* § 226(a)(9).  Plus, as Plaintiff only had one temporary assignment with Kforce, no separating by assignment would have been possible.  Fourth, Plaintiff incorrectly claims that her wage statements lacked an employee identification number.  As discussed, they had Plaintiff's Kforce employee number, complying with the law.

Finally, Plaintiff incorrectly claims that Kforce did not provide a document

---

[5] Kforce asserted this defense in its Answer.  *See* Dkt. No. 1, Exh. J, Answer, pp. 2-3.

accurately showing the $310.86 in net pay she earned in the final week of her assignment at TRG. *See* FAC ¶¶ 57-58. As discussed, Kforce provided Plaintiff with statements showing the correct amount of "net pay" and indicating that Kforce paid it through a paycard. In addition, Plaintiff cannot demonstrate any injury on this issue, as required for any recovery. *Elliott v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181 (C.D. Cal. 2008). As the FAC demonstrates, Plaintiff admittedly knew the amount of her net pay, thus experiencing no confusion or injury. *See* FAC ¶ 58.

Accordingly, because these claims fail in the Second Cause of Action, they should be dismissed.

### D.    Plaintiff's Third Cause of Action Fails.

In her Third Cause of Action, Plaintiff alleges an "unlawful payroll scheme." FAC ¶¶ 76-77, 79. Plaintiff concedes that the "exact nature" of her claim "is unclear at this point." FAC ¶ 78. Essentially, Plaintiff first complains that Kforce paying the final wages on her TRG assignment by debit card allegedly violated sections 212 and 213. FAC ¶¶ 69-73. Reflecting the speculative nature of this claim, Plaintiff can only allege that she "is informed and believes that she incurred fees while attempting to access her money." FAC ¶ 71. The second part of the alleged scheme is Plaintiff's allegation that Kforce violated sections 221 and 223, by somehow "deducting" her net pay and depositing it onto a debit pay card. FAC ¶¶ 74-80. These claims fail.

### 1.    Plaintiff Lacks a Private Right of Action.

Plaintiff lacks a private right of action to sue directly under these statutes. "A violation of a state statute does not necessarily give rise to a private right of action." *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal.4th 592, 596 (2010). A private action exists only if the statute in "clear, understandable, unmistakable terms" shows an intent to create such a right. *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 295 (1988). Among such clear indications, the law may expressly state that a person has or is liable for a cause of action for a violation, or "more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by

17

way of an action." *Lu, supra,* 50 Cal.4th at 597. If the Legislature "expressed no intent on the matter either way, directly or impliedly, there is no private right of action." *Animal Legal Defense Fund v. Mendes*, 160 Cal.App.4th 136, 142 (2008).

For example, in *Lu*, the California Supreme Court most recently held that, although section 351 declared a gratuity "to be the sole property of the employees or employees to whom it is paid," this language "does not unmistakably" establish a private right to sue. *Lu, supra,* 50 Cal.4th at 598. There, the statute "does not expressly state that there is a cause of action for any violation; nor does it refer to an employee's right to bring an action to recover any misappropriated gratuities." *Id.* Rather, related provisions create a misdemeanor offense for a violation and gave the Department of Industrial Relations authority to enforce "this article" of the Labor Code. *Id.* This enforcement scheme displaces a private right of action.

This latter point is very significant. "[T]he fact that the legislature expressly included a right of action on the part of the [Labor Commissioner] implies that the legislature intended to *exclude* a private right of action." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1475 (C.D. Cal. 1996). In *Bureerong*, the court held that no private right of action existed when the statutes at issue provided for administrative enforcement by the Labor Commissioner. That arrangement showed that the Legislature intended "agency enforcement, *not* private litigation." *Id*.

Similarly, the statutes on which Plaintiff attempts to sue do not provide for a private right of action. First, there is no private right of action under Sections 212 and 213. They are companion statutes. Section 212 addresses prohibited form of wage payments. It is "a measure essentially intended to prevent employers from giving employees paychecks that cannot be cashed." *Brown v. Superior Court*, 199 Cal.App.4th 971, 977 (2011). In addition, "The accepted purpose of Labor Code section 212 is to prevent employers from paying wages by giving orders payable only in goods, or orders of an indefinite nature not payable on demand, but at some future time, or paychecks which cannot be honored because of the drawee's insufficient

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

funds." *Brown v. Superior Court*, 199 Cal.App.4th 971, 997 (2011)(internal citations and quotations omitted).  Section 213, in turn, provides "Exceptions" to section 212.

Nothing in either section provides for a private right of action, imposes any liability or remedy, or refers to any enforcement means.  The lack of these provisions demonstrates the lack of a private right of action.  *Lu, supra,* 50 Cal.4th at 597.  Tellingly, the statutes also do not create any "entitlement to wages or specific penalties" due an employee directly – another hallmark of the lack of a private right of action.  *Johnson v. Hewlett-Packard Co.*, 809 F. Supp.2d 1114, 1136 (N.D. Cal. 2011).  Thus, sections 212 and 213 do not provide a private right of action.

A closer look at the statutory scheme confirms that there is no private right of action.  As discussed, the inclusion of criminal provisions or providing for an agency's enforcement in lieu of a private action also demonstrates the lack of a private right of action.  *Bureerong, supra,* 922 F.Supp. at 1475; *Lu, supra,* 50 Cal.4th at 598.  Sections 212 and 213 are part of a scheme with both attributes.  Sections 214 through 216 establish a misdemeanor for the violation of section 212 and provide for criminal prosecution.  Indeed, in the 75 years, the three reported decisions on section 212 were "within the context of criminal prosecutions."  *Brown, supra,* 199 Cal.App.4th at 997.

Section 217 provides that the Division of Labor Standards Enforcement ("DLSE") "shall inquire diligently for any violations of this article, and, in cases where it deems proper, shall institute actions for the penalties provided for in this article *and shall enforce this article*."  (Emphasis added.)[6]  Section 225.5 imposes a civil penalty for violation of section 212.  That penalty "shall be recovered by the Labor Commissioner," and any action "shall be brought in the name of the people of the State of California and the Labor Commissioner and attorneys thereof may proceed and act for and on behalf of the people in bringing the action."  § 225.5(b).  The law thus

---

[6] "[T]his article" refers to Article 1 of Division 2 of the Labor Code, consisting of sections 200 through 243.

---

19

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT

expressly provides for either criminal or agency enforcement in lieu of a private action. Consequently, Plaintiff has no private right of action under sections 212 and 213.

Next, Plaintiff also lacks a private right of action under sections 221 and 223. One court specifically held that section 223 affords no private action: "The text of section 223 does not support the existence of a private right of action." *Johnson, supra,* 89 F.Supp.2d at 1136.  Section 221 also does not provide for a private action. Similar to Section 223's mere declaration that an employee may not "secretly pay a lower wage while purporting to pay the wage designated by statute or by contract," section 221 merely declares that an employer cannot "collect or receive from an employee any part of wage" paid to an employee as a rebate.  Again, nothing in these sections creates a private action, provides for payment of wages or penalties directly to an employee, or provides for a means of enforcement by an individual.  The lack of these features demonstrates that there is no private right of action. *Johnson, supra,* 809 F.Supp.2d at 1136; *Lu, supra,* 50 Cal.4th at 597.

Again, too, sections 221 and 223 are part of the same scheme as sections 212 and 213, providing for criminal or agency enforcement rather than a private right of action.  Section 225 creates a misdemeanor offense for violation of sections 221 and 223.  In turn, section 217 again provides that the DLSE "shall institute the actions for the penalties . . . and shall enforce this article," of which sections 221 and 223 are a part.  Section 225.5 again further provides for penalties for violations of sections 221 and 223, which "shall be recovered by the Labor Commissioner" and any action "shall be brought" by the Labor Commissioner.  Again, here, the law provides for criminal or agency enforcement rather than a private right of action.

Accordingly, Plaintiff lacks a private right of action under each of these sections.  Her Third Cause of Action should be dismissed on that basis.

## 2.  **Plaintiff's Claims Fail in Any Event.**

Although the lack of private right of action dooms Plaintiff's Third Cause of Action, she cannot recover anyway.

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

First, Plaintiff complains (but is not necessarily sure) that she "is informed and believes that she incurred fees while attempting to access her money." FAC ¶ 71. The decisive issue is not whether Plaintiff incurred fees, but rather she had an option for withdrawing all of her money on demand without a fee. § 212(a)(1)(instrument must be "negotiable, in cash, on demand, without discount, at some established place of business in the state"). As long as she did, there was no violation of the law. *Holak v. Kmart Corp.*, 2012 U.S. Dist. LEXIS 176331, at *16-*20 (E.D. Cal. Dec. 12, 2012). Here, as discussed, Plaintiff had the option through the Money Network checks of withdrawing all of her money at once, without any fee, at numerous Walmart stores in California.[7] She thus has no claim at all under section 212 and 213.

Second, there was no rebate or secret underpayment of wages in violation of sections 221 or 223, or even any rebate or underpayment at all. To the contrary, as discussed, the $310.86 due Plaintiff as net pay for the final week of her assignment was, in fact, provided to Plaintiff through the paycard with Money Network checks. Kforce did not collect any of that amount. In addition, section 223 prohibits employers from keeping any underpayment secret from enforcement authorities – "not from the employees themselves, who presumably are well aware of what they are paid." *Brown, supra,* 199 Cal.App.4th at 991. Here, Plaintiff undisputedly knew what she was paid and there was no underpayment. Even more, there was nothing "secret" at all. *Id.* Accordingly, these claims fail in any event.

**E.    The Punitive Damages Claim Is Barred As A Matter Of Law.**

In addition to failing to state a plausible claim in her Third Cause of Action, Plaintiff's claim for punitive damages there must be dismissed. A court may grant

_____

[7] The Labor Commissioner also issued an opinion letter validating payment of wages by paycards, with Money Network checks, as long as the method permits at least one transaction per pay period without fee. *See* Req. for Jud. Notice, Exh. B, DLSE Opinion Letter 2008.07.07-2, dated July 7, 2008, p. 5.

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

summary judgment on a punitive damages claim alone. *Reid v. Smithkline Beecham Corp.*, 366 F.Supp.2d 989, 1000-1002 (S.D. Cal. 2005). Plaintiff's Third Cause of Action seeks punitive damages for alleged violation of sections 212, 213, 221, and 223. FAC ¶ 81. For two reasons, Plaintiff cannot recover punitive damages.

First, as a matter of law, California bars recovery of punitive damages for alleged wage and hour violations of the Labor Code. *See Brewer v. Premier Golf Properties, LP*, 168 Cal.App.4th 1243, 1251-1256 (2008). The Labor Code's wage and hour requirements are "statutory obligations imposed only when the parties have entered into an employment contract and are obligations *arising from* the employment contract. The breach of an obligation arising out of an employment contract, even when the obligation is implied in law, permits contractual damages but does not support tort recoveries." *Id.* at 1256. Thus, these "Labor Code violations . . . do not support punitive damages" under California law. *Id. See also Madrigal v. Tommy Bahama Group, Inc.*, 2010 U.S. Dist. LEXIS 121573, *19-*22 (C.D. Cal. Oct. 18, 2010)(dismissing punitive damages claims because "Plaintiffs cannot recover punitive damages based on their wage and hour claims.").

Second, Plaintiff fails even to allege that "an officer, director, or managing agent of the corporation" committed the alleged violations. This point is an element of punitive damages under California law. *See* Cal. Civ. Code § 3294(b); *White v. Ultramar Inc.*, 21 Cal.4th 563, 566-567 (1999). However, the FAC is devoid of any such essential allegation. FAC ¶ 81. Because of Plaintiff's failure to even plead this element or any supporting facts, her claim for punitive damages fails as well. *Bieber v. State Bank of Terry*, 928 F.2d 328, 330 (9th Cir. 1991). Accordingly, for both reasons, Plaintiff's punitive damages claim must be dismissed.

### F.  Plaintiff Cannot Recover Waiting Time Penalties.

Plaintiff also cannot recover section 203 waiting time penalties under her Fourth Cause of Action. She alleges that Kforce discharged her when she finished her TRG assignment and has not paid her all wages due from her employment with Kforce.

Plaintiff claims that she was not paid her wages for interview time or wages allegedly still due for the final week of her assignment with TRG. FAC ¶¶ 88-89. Plaintiff is not due waiting time penalties under either basis.

Section 203 imposes a waiting time penalty if an employer "willfully fails to pay . . . any wages of an employee who is discharged or quits."[8] These penalties are not automatic. Rather, a failure to pay wages timely to a former employee must be willful. It is not willful – and thus not subject to penalties – if an amount is the subject of "a good faith dispute that any wages are due." Cal. Code Regs., tit. 8, § 13520. *See also Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1200-1204 (2008)(declining to impose waiting time penalties because of good faith dispute based on unsettled law).

Plaintiff cannot recover waiting time penalties with respect to her claimed interview pay for two reasons. First, as discussed, Plaintiff is not due any interview pay. Obviously, without any unpaid wages, there cannot have been a failure to pay and, thus, waiting time penalties cannot be due.

In addition, any interview pay due is the subject of a good faith dispute, precluding waiting time penalties. Where the law has been uncertain, courts hold that an employer did not willfully fail to pay wages and thus does not owe waiting time penalties. *Amaral, supra,* 163 Cal.App.4th at 1200-1204 (no penalties because legal obligations "were unclear" and "no court had previously addressed the scope or the validity" of law at issue); *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7-9 (1981)(with legal "uncertainty," employer "should not be penalized"). Willfulness may be "primarily legal in nature." *Amaral, supra,* 163 Cal.App.4th at 1203.

Here, even if Plaintiff was due interview pay, the state of the law precludes any waiting time penalties on such wages as a matter of law. As discussed, at the least, the

---

[8] At this point, Kforce does not concede whether Plaintiff's employment ended or Kforce continued to employ her after the end of her TRG assignment. Such issues are immaterial to resolution of the Fourth Cause of Action, because Plaintiff cannot establish either part of her claim in any event.

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

law has been uncertain with respect to whether employers must pay for interview time spent on an initial interview.  No case has held that such initial interviews must be paid.  *Sullivan*, in fact, treated the initial interview as not compensable, as has the Labor Commissioner's authority.  As a result, based on the state of the law up to now, a good faith dispute would exist as a matter of law and bar Plaintiff from recovering waiting time penalties for her claimed interview time.

Second, Plaintiff also cannot recover waiting time penalties for the alleged failure to pay her $310.86 in net wages from the final week of her TRG assignment.  FAC ¶ 89.  As discussed above, this amount was paid at the end of her assignment.  It does not remain unpaid; thus, no penalty is due.  Accordingly, Plaintiff's waiting time penalty claim must be dismissed.

### G.    **Plaintiff's Unfair Competition Claims Also Fail.**

Plaintiff's Unfair Competition Law ("UCL") cause of action, seeking restitution under California Business and Professions Code section 17200 *et seq.*, duplicate the other causes of action.  FAC ¶¶ 96-99, 101.  It fails as well.

UCL claims "depend on the validity" of the underlying claims.  *Martinez, supra,* 49 Cal.4th at 48 n. 10.  To the extent that Plaintiff seeks restitution of wages, those claims fail here for the same reasons.  Her claims based on sections 212, 213, 221, and 223 fail to the extent realleged here, as Plaintiff is not due any amounts related to her paycard.  Because Plaintiff cannot establish any recovery on the underlying claims, summary judgment follows under the UCL.  *Johnson, supra,* 809 F. Supp.2d at 1139.

The remainder of Plaintiff's UCL claim fails, too.  Plaintiff seeks waiting time penalties under section 203 and penalties under section 226 concerning itemized wage payment statements.  FAC ¶ 97.  Penalties are not recoverable through the UCL.  *Korea Supply Co v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178 (2000).  Unlike wages, penalties "cannot be recovered as restitution under the UCL" because they are not restitutionary.  *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389, 1401-1402 (2010).

Under these rules, in *Pineda*, the California Supreme Court held that waiting time penalties cannot be recovered through a UCL claim. "Section 203 is not designed to compensate employees for work performed. Instead, it is to encourage employers to pay final wages on time, and to punish employers who fail to do so. . . . We thus hold that section 203 penalties cannot be recovered as restitution under the UCL." *Id.*

Likewise, itemized wage statement penalties under section 226 also cannot be recovered through a UCL claim. It provides for a "penalty" for violations. § 226(e)(1). The plain language establishing a "penalty" controls. *Morgan v. United Retail, Inc.*, 186 Cal.App.4th 1136, 1142-1143 (2010). As a result, California courts have held that section 226 establishes a potential "penalty" for violations related to inaccurate wage statements. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1108 (2007)(holding Legislature "imposed a penalty on employers who fail to provide itemized wage statements that comply with the Labor Code"]; *Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 341 ["an employee [is] entitled to recover a statutory penalty under section 226, subdivision (e).].) Consequently, because section 226 involves a penalty, Plaintiff also cannot recover any amounts under that statute through a UCL claim. Accordingly, Plaintiff's Fifth Cause of Action fails.

## VI.   CONCLUSION

For all of these reasons, Kforce respectfully request that the Court grant its Motion for Summary Judgment.

Dated: November 25, 2013                    Respectfully Submitted,

NIXON PEABODY LLP

By:    /s/ Paul R. Lynd
Paul R. Lynd
Attorneys for Defendant
KFORCE INC.

14722704.1

DEFENDANT KFORCE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT