JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **LIZA GUNAWAN, et al.**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**HOWROYD-WRIGHT EMPLOYMENT AGENCY, et al.,**<br><br>**Defendants.** | **Case No.: SACV 13-01356-CJC(AGRx)**<br><br>**ORDER REGARDING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

On August 30, 2013, Defendant KForce, Inc. ("KForce") removed this action, filed by Plaintiffs Liza Gunawan and Danny Canlas (together, "Plaintiffs"), from California Superior Court asserting jurisdiction under the Class Action Fairness Act ("CAFA"). (Dkt. No. 1.) Plaintiffs bring a putative class action against KForce and Workway (together, "Defendants") asserting wage and hour claims arising from a purported employment relationship. (Dkt. No. 1, First. Am. Compl. ["FAC"].) On

October 31, 2013, having read Workway's motion to dismiss Ms. Gunawan's FAC, (Dkt. No. 14), the Court converted the motion to one for summary judgment and ordered the parties to submit additional briefing. (Dkt. No. 26.) The Court additionally ordered KForce to file its own motion for summary judgment on Ms. Gunawan's claims against it. (*Id.*) Before the Court is Workway's motion for summary judgment, (Dkt. No. 34), KForce's motion for summary judgment, (Dkt. No. 35), and Ms. Gunawan's cross-motions for partial summary judgment against Workway and KForce, (Dkt. Nos. 36, 37). For the reasons stated herein, KForce's motion for summary judgment is **GRANTED IN SUBSTANTIAL PART**. Further, the Court finds Workway to have been an improperly joined defendant, and **REMANDS** the claims asserted against it to Orange County Superior Court. Workway's motion for summary judgment, and Ms. Gunawan's cross-motion for partial summary judgment against it, are **DISMISSED**. Finally, Ms. Gunawan's motion for partial summary judgment against KForce is **DENIED**.

## BACKGROUND

KForce is a temporary staffing agency which works with its client companies to fill their employment vacancies with qualified candidates.[1] (Dkt. No. 35-1, KForce's Uncontroverted Facts ["KForce UF"] ¶ 1.) When KForce locates a qualified prospective candidate for its client employer's vacancy, it will contact the candidate to discuss their interest in and qualifications for the position, and possibly set up an interview for the position. (KForce UF ¶ 2–6.) If KForce's client wants to hire the prospective employee, that employee will be hired as a "consultant" for KForce, but then assigned to work for KForce's client. (KForce UF ¶ 3.)

---

[1] Except where otherwise noted, the facts described herein are undisputed by the parties.

Plaintiff Liza Gunawan is an individual who utilized KForce's services to obtain a temporary employment position. Ms. Gunawan had submitted an on-line application for employment with KForce in June 2012. (Dkt. No. 35-6 ["Chandler Decl."] ¶ 5.) Seeking to fill a number of vacancies for its client, Title Resource Group ("TRG"), KForce identified Ms. Gunawan as a possible employment candidate, and invited her for an interview with KForce on June 7, 2012. (KForce UF ¶¶ 5–6.) Subsequent to that interview, KForce contacted TRG to inquire whether it was interested in interviewing Ms. Gunawan for a vacant position. (KForce UF ¶ 7.) KForce modified Ms. Gunawan's resume and then sent it to TRG. (Dkt. No. 49-1, Pls.' Additional Uncontroverted Facts ["PUF"] ¶ 1.) TRG decided to interview Ms. Gunawan. The interview was set up by KForce, and held on June 8, 2012. (PUF ¶ 2.) After the interview, TRG informed KForce that it wanted to hire Ms. Gunawan. Therefore, Ms. Gunawan returned to KForce's offices to complete new hire paperwork. (KForce UF ¶¶ 18–20.) The paperwork she signed on June 8 made her an employee of KForce, with her assignment with TRG to commence on June 11, 2012. (KForce UF ¶ 23–25.) The assignment extended through October 2012, (KForce UF ¶ 25–27), when, on October 11, 2012, Ms. Gunawan received notice that effective the prior day, she had been discharged from her employment with KForce for "unsatisfactory work performance." (Dkt. No. 36-4 ["Gunawan Decl."], Exh. H.) After her discharge, Ms. Gunawan's final wage payment was made to her in the form of a debit card. (KForce UF ¶¶ 27–28; PUF ¶ 9.)

Like KForce, Workway is also a temporary staffing agency that sets up employment interviews between prospective employees and employers. (Dkt. No. 34-1, Workway's Uncontroverted Facts ["Workway UF"] ¶¶ 1–7.) Utilizing Workway's service, Ms. Gunawan interviewed with two of Workway's clients, Auction.com and IMPAC, Inc. (Workway UF ¶¶ 23, 27.) Ms. Gunawan was never selected for an assignment with either company. (Workway UF ¶¶ 25, 28.)

**ANALYSIS**

**I. Misjoinder of Workway**

Federal Rule of Civil Procedure 20, the permissive joinder statute, provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Here, there is no allegation of joint, several, or alternative liability with respect to KForce and Workway. In fact, Ms. Gunawan does not allege that there is any relationship between the parties at all, nor do her interactions with them arise out of the same transaction, occurrence, or series of transactions or occurrences. Joinder of claims against them is improper.

Moreover, Workway, like Ms. Gunawan, is a California citizen. As a result, Workway cannot meet the "minimal diversity" requirement of the Class Action Fairness Act. The Court therefore lacks jurisdiction over Ms. Gunawan's state law claims. The Court finds it appropriate to sever Ms. Gunawan's claims against Workway and to REMAND such claims to Orange County Superior Court. *See* Fed. R. Civ. P. 21. Because the Court does not retain jurisdiction over Workway, its motion for summary judgment is DISMISSED.[2]

//

[2] At the January 27, 2014 hearing on the parties' cross-motions, all parties agreed that the claims against KForce and Workway should be severed. The Court then proposed that it might be possible to institute a separate federal case against Workway. However, because the minimal diversity requirement of the Class Action Fairness Act cannot be met, the Court lacks jurisdiction over such a separate action. The claims against Workway must therefore be remanded to state court.

## II. KForce's Motion for Summary Judgment

Summary judgment is proper if the evidence before the court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a moving party without the ultimate burden of persuasion at trial may carry its initial burden of production by showing that the opposing party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial, that is, it does not have enough evidence from which a jury could find an essential element of the opposing party's claim or defense. *Celotex*, 477 U.S. at 325; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once that initial burden is met, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In considering the motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992).

### A. Ms. Gunawan's First Claim for Relief for Non-Payment of the Minimum Wage

Ms. Gunawan's first cause of action presents the question whether KForce is required to compensate her for the time she spent interviewing with TRG, prior to the

commencement of her formal employment relationship with KForce. While there is a dearth of binding, or even on-point persuasive, authority on the topic — in fact, no court appears to have answered the precise question presented here — the Court finds that the answer is no. Ms. Gunawan is not entitled to payment of the minimum wage for time spent interviewing for prospective employment, because at that time, she was not an employee of KForce performing compensable work.

California's cause of action for violations of the minimum wage law is described in Labor Code section 1194. The section provides that "any *employee* receiving less than the legal minimum wage or the legal overtime compensation applicable to the *employee* is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Labor Code § 1194 (emphasis added). Quite clearly, the statute contemplates that only an employee, and not a prospective employee or applicant for employment, can recover under section 1194. This is unlike other sections of the Labor Code wherein the rights of applicants are also protected. *Compare* Cal. Labor Code § 1194 (referring only to protections afforded to "employee[s]") *with* Cal. Labor Code § 98.6(a) (prohibiting discrimination against any "employee or applicant for employment because the employee or applicant" engaged in protected activity) *and* Cal. Labor Code § 1051 (providing protection for the fingerprints and photographs of either "employee[s] or applicant[s]").

Whether an individual is classified as an employee is determined by reference to the relevant Wage Order promulgated by the Industrial Welfare Commission ("IWC"). The parties seem to agree, or otherwise do not dispute, that IWC Wage Order 4, governing professional, technical, mechanical, and similar occupations, is applicable here. The Wage Order defines an "employee" as "any person employed by an employer," and further provides that "employ" means to "engage, suffer, or permit to

work." Cal. Code Regs. tit. 5 § 11040. In determining the nature of the employment relationship, a primary inquiry of California courts is whether the alleged employer exercised or had the right to exercise control over the alleged employee. *See Martinez v. Combs*, 49 Cal. 4th 35 (2010); *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419 (2010). Common law definitions of work support the proposition that the determination of whether a compensable employment relationship is formed centers on the issue of control. *See Black's Law Dictionary* 1742 (2009) (defining "work" as "physical and mental exertion to attain an end, especially as controlled by and for the benefit of an employer; labor."). Here, because Ms. Gunawan was not under the control of KForce at the time of the interview, she did not have a compensable employment relationship with KForce under California's wage and hour laws.

In going to the interview with TRG, Ms. Gunawan was not under KForce's control such that her time was not her own. Ms. Gunawan was not required to attend the interview with TRG, but rather, did so voluntarily. (*See* Gunawan Decl. ¶ 4; Filicicchia Decl. Exh. C.) There is no evidence that if she chose not to attend the interview, that Ms. Gunawan would be precluded from any other employment opportunities through KForce. There is no evidence that KForce had control over the questions asked to Ms. Gunawan, or more importantly, over the answers she provided. There is no evidence that KForce had control over the length of the interview, or that KForce required Ms. Gunawan to act in a certain manner while she was there.

Ms. Gunawan argues that she was under KForce's control for purposes of the TRG interview because KForce restricted communications between herself and TRG, because it modified her resume to, among other things, include its own name and contact information, and because it set the time and place of the interview, as well as the wage rate to be paid to Ms. Gunawan upon the commencement of her TRG assignment. (*See* Pl.'s Opp'n at 6.) Such facts do not create a triable issue that Ms. Gunawan was

employed by KForce at the time of her TRG interview. Much like any potential employer, KForce set terms regarding the time, place, and location of Ms. Gunawan's interview. Similarly, not uncommon to any prospective employment relationship, KForce made Ms. Gunawan a take-it-or-leave-it offer with respect to her wages. And much like any potential employer, KForce suggested to Ms. Gunawan that she should dress professionally and arrive early to the interview. (Fillicicchia Decl. Exh. B.) That KForce was the only source through which Ms. Gunawan could be guaranteed contact with TRG is inapposite. Nothing suggests that if she did not want KForce to modify her resume or act as an intermediary between herself and TRG, she could not simply have refused KForce's placement service, and instead, attempted to secure a position with TRG through her own efforts. That she chose instead to utilize KForce's service does not transform Ms. Gunawan from an applicant for employment to an employee.

*Martinez v. Combs*, the California Supreme Court's most recent clarification of the employment relationship, and which the parties cite extensively in their briefing, does not disagree with this result. 49 Cal. 4th 35 (2010). *Martinez* expounded on the definition of "employer" under California's wage and hour laws, holding that "to employ" has three alternative definitions: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.* at 64. The court's test, however, is not easily translated outside of the factual context in which it was developed — that is, the test is, unsurprisingly, most applicable in answering the question posed in *Martinez* itself, whether the defendants in the case could be considered joint employers under the law. There was no question whether the employees in *Martinez* were employees, nor whether they had performed compensable work. Rather, the question was from whom the employees could recover. Therefore, it was highly relevant whether the individual defendants had control over the employees' wages, hours, or working conditions, or whether they had any ability to prevent work they knew the employees were engaging in.

Here, in the context of determining whether an individual is an employee at all, the test is less directly applicable. Certainly, the fact that a prospective employer has control over the wages, hours, and working conditions of the prospective employee, if hired, does not transform that applicant for employment into an employee. Similarly, that the prospective employer allows the prospective employee to interview for employment cannot mean that that prospective employer has suffered or permitted the individual to work such that she is an employee entitled to compensation. Again, the central question is whether work was performed. As described above, the answer here is no.

Of course, while the *Martinez* test is not directly applicable here, it does inform the analysis to the extent that what the three tests proposed by the California Supreme Court seek to establish is the nature of the control relationship between the parties. At its core, the *Martinez* test suggests that an employer is an individual that has the ability to control the terms and conditions of an individual's work, or that has such control over an individual so as to have the ability to permit or prevent that individual from working. The focus on control then is an appropriate inquiry in determining whether a compensable employment relationship was formed when Ms. Gunawan attended the TRG interview. Such focus requires the determination that Ms. Gunawan did not perform work in attending the TRG interview.

Ms. Gunawan's argument that by attending the TRG interview she conferred a benefit upon KForce is unavailing. As an initial matter, *Martinez* appears to limit the idea that the conferral of a benefit upon another is enough to form an employment relationship. *See Martinez*, 49 Cal. 4th at 69 ("[T]he concept of a benefit is neither a necessary nor a sufficient condition for liability under the 'suffer or permit' standard. Instead, as we have explained, the basis of liability is the defendant's knowledge of and failure to prevent the work from occurring."). However, to the extent that *Martinez* continues to allow the benefits inquiry to guide the determination of whether an

employment relationship was formed, no reasonable interpretation of the facts would allow for a determination that Ms. Gunawan's activity was undertaken primarily for the benefit of KForce. Like any applicant for a job, Ms. Gunawan chose to attend the TRG interview. (Gunawan Decl. ¶ 4.) While in her papers and at the hearing, Ms. Gunawan attempts to couch herself as a "brand representative" for KForce, who conferred the benefit of spreading KForce's name to client employers, (Pl.'s Opp'n at 10–12), such argument belies the key fact that Ms. Gunawan was "interviewing for employment" with TRG — that is, she was interviewing for a job that she wanted and that would compensate her for her work. That her attendance at the interview, a necessary condition of many employment relationships, also may have conferred some attenuated benefit to KForce is not enough to make Ms. Gunawan an employee of KForce at the time of the interview.

Ms. Gunawan's reference to the opinion in *Sullivan v. Kelly Services, Inc.* is similarly unavailing. No. C 08-3893 CW, 2009 WL 3353300 (N.D. Cal. Oct. 16, 2009). In *Sullivan*, the court faced a similar factual situation as the one presented here, with one important caveat: at the time of the *Sullivan* plaintiff's interview with the defendant temporary services agency's client, it was undisputed that the plaintiff was already an "employee" of the temporary services agency. *Id.* at * 1. Therefore, rather than determine the precise question presented by Ms. Gunawan's first cause of action — that is, whether Ms. Gunawan was an employee of KForce at the time of her interview with TRG — the *Sullivan* court was asked to determine whether a temporary services employer must treat time spent by its employees interviewing with its clients for offered positions as "hours worked" for purposes of minimum wage laws. *Id.* at *4. The court held that an employee's time spent interviewing with a temporary agency's clients was compensable hours worked under California law. *Id.* at *7.

As an initial matter, the *Sullivan* opinion is not binding on this Court. Moreover, the Court is unpersuaded by *Sullivan*'s implicit finding that an individual who voluntarily attends an interview arranged by a temporary services agency is under the control of the temporary services agency such that he or she can be considered to perform compensable work. Finally, the Court notes that even to the extent the *Sullivan* court broadened the definition of when interview time is compensable, its holding was limited to the context where the individual being sent to interviews was already an employee of the temporary services agency. Nothing in the opinion suggests that merely by attending an interview with a potential employer an individual becomes an employee of the temporary services agency.[3]

Ultimately then, the Court finds that at the time of her interview with TRG, Ms. Gunawan was not an employee of KForce performing compensable work under Labor Code section 1194. Ms. Gunawan was a prospective employee who, like any other prospective employee, attended an interview to determine whether an offer of employment would be extended to her. That her interview was arranged through, and its details controlled by KForce, her eventual employer, is not enough to establish the novel legal proposition that a prospective employee's interview for employment is compensable under California's minimum wage laws. KForce is entitled to summary judgment on Ms. Gunawan's first cause of action.[4]

//

//

[3] The *Sullivan* court is not the only court to have addressed the issue. In *Lewis v. Adecco USA, Inc.*, the Alameda County Superior Court, answering the same question posed in *Sullivan*, found that the employee's time spent interviewing with the temporary services employer's clients was not compensable. (*See* Dkt. No. 58 ["KForce Request for Judicial Notice"].)

[4] For the reasons stated herein, Ms. Gunawan's cross-motion for summary judgment against KForce as to her first cause of action is DENIED.

**B. Ms. Gunawan's Second Claim for Relief for Failure to Provide Accurate Wage Statements**

California Labor Code section 226 requires employers to provide employees with accurate itemized wage statements, in writing, and showing such information as "gross wages earned," "total hours worked by the employee," "all deductions," "net wages earned," "the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number," "the name and address of the legal entity that is the employer," and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Labor Code § 226(a). The section provides that "an employee suffering injury as a result of a knowing and intentional failure by an employer to comply" with the above-noted requirements is entitled to recover damages. Cal. Labor Code § 226(e)(1). "The injury requirement in [section 226(e)] cannot be satisfied simply if one of the nine itemized requirements in [section 226(a)] is missing from a wage statement." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1135 (C.D. Cal. 2011) (quoting *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1142 (2011)). Rather, the plaintiff must be able to demonstrate an injury arising from the missing information. *Id.*

Ms. Gunawan first alleges that KForce violated the requirements of section 226 because the wage statements provided to her do not include payment for minimum wage owed as a result of attending the interview with TRG. Second, Ms. Gunawan alleges that KForce's wage statement is deficient in that it does not accurately represent the employee's net wages earned, (Compl. ¶ 58), that it does not state the inclusive dates of the period for which the employee was paid, (Compl. ¶ 59), that it does not state the last four digits of the employee's social security number or an employee identification number, (Compl. ¶ 60), that it does not provide the name and address of the legal entity that is the employer, (Compl. ¶ 61), and that it does not indicate the rate of pay and the

total hours worked for each temporary services assignment engaged in by the employee, (Compl. ¶ 62).[5]

As an initial matter, Ms. Gunawan admits that her claim under section 226(a) is derivative of her claim for unpaid minimum wages. (*See* Pls.' Opp'n at 15 n.7.) As described above, Ms. Gunawan was not entitled to payment for the time she spent interviewing at TRG. A wage statement that does not reflect compensation for such non-compensable time is not deficient.

Additionally, there is no genuine dispute that KForce's wage statement is in compliance with section 226(a)'s requirements to include an employee identification number on the wage statement, (*see* FAC, Exh. B ["Wage Statement"] (displaying an employee identification number of 000270192); Dkt. No. 35-7 ["Specht Decl."] at ¶ 15 (confirming Ms. Gunawan's employee identification number as 000270192)), the name and address of her employer, (*see* Wage Statement (displaying the name and address of KForce)),[6] and rate of pay and hours worked,[7] (*see* Wage Statement). Further, Ms. Gunawan's claim that the wage statement provided to her does not separate her wages

---

[5] Apart from a short footnote stating that her second claim for relief is derivative of her first claim for relief, Ms. Gunawan does not provide any opposition to KForce's motion for summary judgment with respect to the claim for failure to provide accurate wage statements.

[6] Ms. Gunawan argues that a wage statement must also include the name and address of the company to which an employee of a temporary services agency is temporarily assigned to work. She offers no authority to support her argument, nor has the Court found any such authority in its own search.

[7] While the wage statement attached to Ms. Gunawan's Complaint does not show her overtime rate of pay, it does include her regular rate of pay, number of hours worked—both regular hours and overtime—and her total gross pay earned. (*See* Wage Statement). Based on that information, Ms. Gunawan would be able to perform simple math to ensure that her overtime rate of pay was accurate, and therefore, she fails to allege any cognizable injury. *See Alonzo v. Maxiums, Inc.*, 832 F. Supp. 2d 1122, 1136 (C.D. Cal. 2011) ("Much to the relief of math teachers everywhere, the California Court Appeal and courts of this District have held that performing simple math alone is not an injury compensable under California law. This Court now joins them.").

according to each temporary assignment she worked is not cognizable because the amended section 226(a)(9), which does include a requirement that if the employer is a temporary services employer, the wage statement must include the employee's "rate of pay and the total hours worked for each temporary services assignment," did not become effective until July 1, 2013. *See* Cal. Labor Code § 226(a)(9). Because the effective date of the provision was after the termination of Ms. Gunawan's employment, she cannot state a claim under it.

Finally, as noted above, Ms. Gunawan offers no argument as to the survival of her other theory for relief under section 226(a), and instead simply states that her claim under section 226(a) is derivative of her first cause of action, on which the Court has granted summary judgment to KForce, presumably withdrawing her other claims under section 226. (Pl.'s Opp'n at 15 n.7 ("Plaintiff's claim for inaccurate wage statements is derivative of her claim for failure to pay minimum wage for time spent interviewing and thus a finding of liability with respect to interview time necessarily means KForce would also be liable for failing to provide accurate wage statements for all earned wages.") To the extent Ms. Gunawan did not intend to withdraw her additional claims under section 226 by her statement in her opposition, she offers no evidence in support of them beyond the wage statement itself. Particularly, Ms. Gunawan offers no evidence that she suffered injury from KForce's alleged technical violations of section 226. Because such injury is a necessary condition of her recovery under the section, Ms. Gunawan's failure to present any evidence of it is another reason why KForce is entitled to summary judgment on her second cause of action.

//

//

//

//

**C. Ms. Gunawan's Third Claim for Relief under Labor Code Sections 212, 213, 221, and 223.**

Ms. Gunawan's third claim for relief alleges violations of Labor Code sections 212, 213, 221, and 223. None of these provisions of the Labor Code provides Ms. Gunawan a private right of action.

Under California law, "[a]doption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute. Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature intended to create such a right to sue for damages." *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999). The assumption is that if the Legislature intends to create a private right of action, it will do so "directly," and "in clear, understandable, unmistakable terms." *Id.* at 62–63 (citing *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 294–95, (1988)). "If [the court] determine[s] the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action . . . ." *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 172 (2008) (citing *Moradi-Shalal*, 46 Cal. 3d at 305).

Labor Code section 212 concerns the manner in which wages are paid. Its accepted purpose "is to prevent employers from paying wages by giving orders . . . payable only in goods, or orders of an indefinite nature not payable on demand, but at some future time or paychecks which cannot be honored because of the drawee's insufficient funds." *Brown v. Superior Court*, 199 Cal. App. 4th 971, 997 (2011) (internal citations and quotation marks omitted). Section 213, a companion provision of section 212, contains certain exceptions to the prohibitions of section 212. Neither section, on its face, evinces any express intent of the legislature to create a private right of action. Rather, the statutory scheme is designed to make violations of section 212 a crime, prosecutable "where the alleged illegal order, check, draft, note, memorandum or

other acknowledgment of wage indebtedness is issued or at the place where it is made payable," Cal. Labor Code § 214; *see also* Cal. Labor Code § 215, or a civil violation with a penalty recoverable by the Labor Commissioner in an action "brought in the name of the people of the State of California," Cal. Labor Code § 225.5(b). Such inclusion of specific provisions for the criminal and agency enforcement of violations of section 212 evinces a lack of intent on the part of the legislature to additionally provide a private right of action. *See Bueerong v. Uvawas*, 922 F. Supp. 1450, 1476 (C.D. Cal. 1996) ("[T]he fact that the legislature expressly included a right of action on the part of the [Labor Commissioner] implies that the legislature intended to *exclude* a private right of action.")

The same is true with regards to Labor Code sections 221 and 223. Section 221 prohibits an employer from collecting or receiving from an employee any part of wages that employer has paid to the employee. Section 223 makes it unlawful for an employer to "secretly pay a lower wage while purporting to pay the wage designated by statute or contract." Neither section, on its face, provides an express private remedy to enforce its provisions. Rather, section 225 makes violations of either provision a misdemeanor, and section 225.5 provides the same statutory penalty scheme as applies to section 212 and 213. Like those sections then, there is nothing to indicate that the legislature intended to create a private right of action to remedy violations of sections 221 and 223. *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) ("[S]ection 223 does not create a private right of action . . . .").

While Ms. Gunawan cites Labor Code section 2698 in her opposition, the Labor Code's Private Attorney's General Act (PAGA) provision, in support of her claim for relief, such citation is unavailing and cannot save her third cause of action. PAGA does authorize private enforcement of Labor Code provisions that provide for a civil penalty recoverable by the Labor Commission. *See* Cal. Labor Code § 2699(a). However, Ms.

Gunawan's FAC does not plead a cause of action under PAGA. She therefore cannot rely on a citation to it to save her claim.

Because Ms. Gunawan has private right of action to enforce Labor Code sections 212, 213, 221, and 223, and because she does not plead PAGA as the source of her cause of action for alleged violations of these statutory provisions, KForce is entitled to summary judgment on Ms. Gunawan's third cause of action.

**D. Ms. Gunawan's Fourth Claim for Relief for Waiting Time Penalties**

Section 203 provides, in relevant part, "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 . . . [and] 202, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty." Section 201 provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately." The provisions of the section apply with full force where an employee of a temporary services employer is discharged by the temporary services employer or leasing employer. Cal. Labor Code § 201.3(b)(4).

Ms. Gunawan argues that she is entitled to continuing wages under Labor Code section 203 because KForce failed to pay her wages within the time period required by Labor Code Section 201. In particular, Ms. Gunawan argues that KForce failed to pay her wages owed for interviewing with TRG. (FAC ¶ 88.) Further, Ms. Gunawan alludes to the late payment of her final paycheck. (*See* FAC ¶ 89.)

As to Ms. Gunawan's claim for entitlement to waiting time penalties as a result of KForce's non-payment of interview wages, as discussed above, Ms. Gunawan is not entitled to payment for time she spent interviewing with TRG. Therefore, she cannot

state a cognizable claim for relief, and KForce is entitled to summary judgment as to this theory. However, as to Ms. Gunawan's other claim for entitlement to waiting time penalties, that she was not paid her wages immediately upon discharge, the Court finds that there is a genuine dispute of fact as to whether Ms. Gunawan was in fact paid her final wages on her date of discharge. Ms. Gunawan was discharged on October 10, 2012. However, there is evidence that Ms. Gunawan may not have been paid her final wages until at least October 11, 2012. (*See* Gunawan Supplemental Decl. ¶ 14; Dkt. No. 36-4 ["Gunawan Decl."] Exh. H.) Such late payment would constitute a violation of the Labor Code. Because there is a genuine dispute as to when Ms. Gunawan was paid her final wages, KForce is not entitled to summary judgment on Ms. Gunawan's fourth cause of action.[8]

While the Court denies in limited part KForce's motion for summary judgment on Ms. Gunawan's claim for waiting time penalties, it is undeniable that this claim for relief is an individual claim, not a class one. By this order, the Court has granted summary judgment against Ms. Gunawan on all her potential class claims — that is, the Court has dismissed all claims over which it has original jurisdiction. Only Ms. Gunawan's individual claim for waiting time penalties remains. However, the Court declines to exercise supplemental jurisdiction over that claim. *See* 28 U.S.C. 1367(c)(3). The claim is therefore REMANDED to Orange County Superior Court.

**E. Ms. Gunawan's Fifth Cause of Action Under the UCL**

Ms. Gunawan's claim under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, alleges that KForce's violation of the above-described statutes constitutes an unlawful business practice under the UCL. (FAC ¶¶ 95–99.) The

---

[8] At the January 27, 2014 hearing on the parties' cross-motions, KForce conceded that there is a genuine dispute as to whether there was a violation of Labor Code section 201.

UCL "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (citing *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999)) (internal quotation marks omitted). Ms. Gunawan's UCL claim therefore "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action." *Alonzo*, 832 F. Supp. 2d at 1137.

None of Ms. Gunawan's claims, however, is a sufficient predicate for a UCL claim. Her claim under section 1194 is insufficient because the time she spent interviewing with TRG is not compensable work. Her claims under section 203, 212, 213, 221, 223 and 226 are all insufficient because, even assuming KForce violated any of these provisions, she suffered no economic injury as a result[9] and statutory penalties are not available under the UCL, which provides only for injunctive and restitutionary relief. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (holding that for a party to satisfy the standing requirements of the UCL, it must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim."); *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1402 ("[S]ection 203 penalties cannot be recovered as restitution under the UCL."); *see Ordonez v. Radio Shack*, 2011 WL 499279 (C.D. Cal. Feb. 7. 2011) ("[T]o the extent plaintiff's UCL claim is based upon his allegations that

---

[9] Ms. Gunawan's FAC alleges that her "final wage statement indicates that her net pay for the year as of October 14, 2012 was $8353.02. This is exactly $310.86 less than what her net pay for the year actually was." (FAC ¶ 89.) However, Ms. Gunawan never alleges, in either her FAC or in her opposition to KForce's motion for summary judgment, that she was never paid the $310.86 she was owed. She in fact acknowledges that she was compensated for her final paycheck as an "employer-provided benefit," (Dkt. No. 49-3 ["Gunawan Supplemental Decl."] ¶ 11), and does not dispute that she was paid $310.86 via a pay card. (*See generally* Gunawan Supplemental Decl.; PUF ¶¶ 27–28.) Ms. Gunawan provides no evidence showing that she was unable to access this money, nor that she was charged any fee for doing so.

defendant failed to keep accurate records, the Court determines that Section 226(e) on its face provides for penalties rather than restitution and therefore cannot be the predicate violation on which to based plaintiff's UCL claim."). Accordingly, KForce is entitled to summary judgment on Ms. Gunawan's fifth cause of action.

**CONCLUSION**

For the reasons stated herein, the Court GRANTS IN SUBSTANTIAL PART summary judgment in favor of KForce on Ms. Gunawan's first, second, third, and fifth causes of action. The Court DENIES summary judgment as to Ms. Gunawan's fourth cause of action against KForce, and REMANDS the matter to Orange County Superior Court. Ms. Gunawan's motion for partial summary judgment against KForce is DENIED.

Additionally, the Court finds that Workway is an improperly joined defendant and SEVERS and REMANDS the causes of action against it to Orange County Superior Court. Workway's motion for summary judgment against Ms. Gunawan is therefore DISMISSED, as is Ms. Gunawan's cross-motion for partial summary judgment against Workway.

DATED: January 30, 2014

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE